**Julio VALENTIN, Plaintiff,**

v.

**NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, Defendant.**

**No. 95 CV 177.**

United States District Court, E.D. New York.

Dec. 18, 1997.

Julio Valentin, Jackson Heights, NY, pro se.

Dennis C. Vacco, Attorney General of the State of New York (Elizabeth G. Ellis, Rosalie J. Hronsky, of counsel), New York City, for Defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Julio Valentin, plaintiff *pro se*, brought this action for discrimination in employment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, alleging that defendant failed to promote him because of his national origin. Defendant moves for summary judgment dismissing the complaint.

### I. *Facts*

Plaintiff, a tax compliance agent with the New York State Department of Taxation and Finance, was hired on May 30, 1985. Plaintiff is Puerto Rican. After passing the New York Civil Service promotional examination, he was promoted on July 13, 1989 to the position of Tax Compliance Agent I, salary grade 14, and became permanent in that position on April 18, 1990.

Plaintiff also passed the promotional examination for Tax Compliance Agent II, salary grade 15, receiving a score of 77 and ranking 95 out of 137. A Civil Service eligible list was established on June 12, 1989. While six people, including plaintiff, were determined to be list eligible, three declined the appointment and two were temporarily unavailable. Plaintiff was then the only candidate on the list.

Plaintiff was interviewed for the position, and his employment records were reviewed. On plaintiff's probationary report for the period ending September 13, 1989 plaintiff's supervisor, Karen Cousin, rated him "Meets Expectations" in the relationships, personal work characteristics and attendance categories, and "Needs Improvement" in the management of work assignments, quality of work, productivity, problem solving and communications categories. The supervisor, commenting on the quality of plaintiff's work, noted: "Mr Valentin must familiarize himself with office policy and procedure. Field work should be more thorough in as far as obtaining pertinent info." Plaintiff's overall assessment for that period was "Needs Improvement."

On plaintiff's probationary report for the period ending November 2, 1989, plaintiff's

supervisor, Anthony Smith, rated him "Needs Improvement" overall, noting: "Julio's case activity reports are often incomplete. Field write-ups are not thoroughly written and pertinent information is often not obtained when T.P. contact is made. Julio must learn office procedures."

On plaintiff's evaluation form for the period from July 14, 1989 to July 13, 1990 the supervisor, Diego Concepcion, commented: "Agent doesn't give immediate attention to hi-value or aged assessments. His behavior at times is strange, agent comes on indifferent and makes odd statements, i.e.: 'He'll shoot all individuals who are in supervisory positions, if he isn't chosen as a supervisor.'"

Plaintiff's records also included a disciplinary memorandum dated April 19, 1988 that placed plaintiff on unauthorized leave without pay instead of the tardy point system "because of your established pattern of morning attendance problems."

Plaintiff was not selected for promotion to the position of Tax Compliance Agent II. The position was then offered to Sandra Velez, also a Puerto Rican employee. After Ms. Velez declined the appointment, another employee who was not on the eligible list, Koon W. Kwok, was provisionally appointed to the position on April 12, 1990. Mr. Kwok had been rated "Highly Effective" on his evaluation form for the period from July 20, 1989 to July 20, 1990. His supervisor, Mary McGivney, commented: "He is an asset to the squad." On his probationary reports for the periods ending September 25, 1989, January 9, 1990, and March 27, 1990, Mr. Kwok's overall ratings were "Exceeds Expectations."

Plaintiff filed an employment discrimination complaint with the State Division of Human Rights on April 12, 1990, alleging that he had been discriminated against on the basis of his national origin. The State Division of Human Rights determined that he was not selected for reasons other than his national origin, and dismissed the complaint on June 15, 1994. The State Division's order found that defendant had legitimate reasons for not selecting the plaintiff, namely, his unsatisfactory work record.

On June 21, 1994 plaintiff filed a grievance letter with the U.S. Equal Employment Opportunity Commissioner (EEOC). The EEOC affirmed the State Division of Human Rights' decision on November 19, 1994. Plaintiff then filed this lawsuit.

### New York Civil Service Law

As a preliminary matter, plaintiff alleges that defendant violated New York state law by not selecting him although he was the only remaining candidate on the list after taking the promotional examination.

Under New York Civil Service Law, appointments are made from so-called eligible lists, which are lists of available applicants in a given geographic area whose test scores on an examination are equal to or higher than those of the third highest ranking candidate who would accept the position.

New York Civil Service Law § 61 then provides: "Appointment or promotion from an eligible list to a position in the competitive class shall be made by the selection of one of the three persons certified by the appropriate civil service commission as standing highest on such eligible list who are willing to accept such appointment or promotion." This is known as the "one in three" rule.

The statute grants a state agency the right to select one of the three highest ranking candidates on an eligible list. If there are fewer than three candidates on an eligible list, a state agency cannot be compelled to make an appointment from that certified eligible list. *See Heslin v. City of Cohoes,* 74 A.D.2d 393, 428 N.Y.S.2d 334, 336–37 (3d Dep't 1980), *rev'd on other grounds,* 53 N.Y.2d 903, 440 N.Y.S.2d 630, 423 N.E.2d 53 (1981). In that case, the agency may make a provisional appointment from outside the list. As plaintiff was the only candidate on the eligible list established on June 12, 1989 when the five other eligible candidates either declined the position or were temporarily unavailable, defendant was under no obligation to appoint him and could properly make a provisional appointment.

## Summary Judgment

On a motion for summary judgment under Rule 56 the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment is warranted only if "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510.

■ To defeat a motion for summary judgment the party opposing it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Although discrimination cases typically involve a plaintiff's allegation of the defendant's discriminatory intent, that alone does not immunize the case from summary judgment if the allegations are conclusory and the defendant's motion is supported by an evidentiary record. "The salutary purposes of summary judgment ... apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985).

### The Title VII Claim

■ Title VII of the Civil Rights Act provides in pertinent part: "It shall be an unlawful employment practice for an employer ... to fail or refuse to hire ... or otherwise to discriminate against any individual ... because of such individual's ... national origin." 28 U.S.C. § 2000e–2 (1994).

To support his claim of discrimination, plaintiff must establish factual issues sufficient to make out a prima facie case of a violation of Title VII. The standards for the burden and order of proof in cases of discrimination arising under Title VII were set out by the Supreme Court in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973).

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination; if he succeeds, the burden of proof then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Should the defendant carry this burden, the plaintiff must then "be afforded a fair opportunity to show that the [defendant's] stated reason for [plaintiff's] rejection was in fact pretext." *McDonnell Douglas Corp.*, 411 U.S. at 804, 93 S.Ct. at 1825. The burden of persuasion at all times remains with the plaintiff. *See Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

Plaintiff has made no showing that he was not selected because of his national origin. Instead, plaintiff merely defends his employment record and attacks the qualifications of Mr. Kwok, who did receive the promotion, and Mr. Concepcion, one of his supervisors. Plaintiff claims that Mr. Kwok, who was appointed instead of him, "could bearly [sic] speak English at the time." In his papers plaintiff derides Mr. Concepcion, his supervisor and also a Puerto Rican national, as "a complete incompetent." In a letter to Magistrate Judge Gold on September 23, 1996, plaintiff says that it is his opinion that "Mr. Concepcion is not even a legitimate employee with the dept. That he is held in his supervisory position solely for the purpose of breaking my case." Plaintiff submits no affidavits and no documentation to support his allegations.

Plaintiff makes the further, unsubstantiated claim that defendant's affidavits and supporting documentation have been falsified. He complains that many affidavits were unsigned or submitted by fax, which he says "seems to indicate that these people had second thoughts about signing a false/manufactured statement." This is incorrect. Defendant submitted to the court the affidavits of 24 employees of the Tax Department, all of which were signed. None of the employees' statements supports plaintiff's claim of discrimination based on his national origin. On this record plaintiff has failed to make out a prima facie case under Title VII.

Even assuming that plaintiff could establish a prima facie case, defendant has articu-

**540**

lated legitimate nondiscriminatory reasons for not appointing him. According to the probationary reports and evaluation forms, plaintiff was a less satisfactory candidate than Mr. Kwok. Unlike Mr. Kwok, plaintiff was repeatedly rated in the "Needs Some Improvement" and "Needs Improvement" categories.

The record also reflects a tendency in plaintiff towards irrational and inappropriate behavior that would make him unqualified for a supervisory position. His supervisor Diego Concepcion said in his affidavit that plaintiff's "behavior was often irrational and combative ... One time he actually threatened me, and used dirty language."

Plaintiff has not set forth any facts which could serve to draw into question defendant's articulation of a nondiscriminatory reason for his rejection. He certainly has not shown that the reason given is pretextual.

Defendant has proffered evidence that other Puerto Rican employees have been promoted to equal or higher positions than that sought by plaintiff, including Mercedes Cintron (Tax Compliance Agent III), Sandra Velez (Tax Compliance Agent II), and Diego Concepcion (Tax Compliance Agent II), and that other employees of Latino heritage are routinely employed and promoted by defendant, including Jose M. Gonzalez (Tax Compliance Manager I), Antonio Baez (Tax Compliance Agent I), and Carmen M. Rodriguez (unspecified). Each of these witnesses has provided an affidavit. None of them supports plaintiff's allegations of discrimination.

Plaintiff has failed to put before this court any facts from which a jury could infer that plaintiff's national origin was anything other than a neutral factor in the decision not to promote him. Defendant's motion for summary judgment is granted.

So ordered.